# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

JENNIFER HUTCHINS,       )
                                )
      Plaintiff,           )
                                )
v.                              )    Case No. 7:16-cv-00676-JEO
                                )
NANCY A. BERRYHILL, Acting  )
Commissioner of Social Security,  )
                                )
      Defendant.         )

## MEMORANDUM OPINION

Plaintiff Jennifer Hutchins brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner")[1] denying her applications for disability insurance benefits and Supplemental Security Income ("SSI").  (Doc. 1).[2]  The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference.  The parties have consented to the jurisdiction

---

[1]Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. See https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

[2]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

of this court for disposition of the matter.  (Doc. 12).  *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(a).  Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

On June 18, 2012, Hutchins protectively filed applications for a period of disability and disability insurance benefits and for SSI, alleging disability commencing June 11, 2012.  (R. 187-200, 262).[3]  She amended her alleged onset date to October 16, 2012.  (R. 16,70, 72).  Following the initial denial of her applications, Hutchins requested a hearing before an Administrative Law Judge ("ALJ").  (R. 99-100).  The hearing was held on December 3, 2013.   (R. 12-43).  The ALJ issued a decision on July 10, 2014, finding that Hutchins was not disabled.  (R. 68-80).

Hutchins requested Appeals Council review on August 13, 2014.  (R. 10, 353-57).  The Appeals Council initially remanded the case because it found that the ALJ had not proffered the consultant examination report of Dr. Walid Freji to Hutchins.  (R. 85-87).  The Appeals Council later determined that the ALJ had in fact proffered the report to Hutchins. (R. 14).  It vacated the remand order on February 25, 2016, and denied review on April 27, 2016.  (R. 1-5, 7-10).  On that

---

[3]References herein to "R.__" are to the page numbers of the administrative record.

date, the ALJ's decision became the final decision of the Commissioner. Hutchins then filed this action for judicial review under 42 U.S.C. § 405(g) & 1383(c)(3). (Doc. 1).

## II.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to

provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and SSI under the Social Security Act, a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five step analysis.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity,

4

age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[4] (citing 20 C.F.R. § 404.1520(a)(4)). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986 ). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.; *Evans*, 551 F. App'x at 524.

## IV. FACTS

Hutchins initially alleged disability based on type II diabetes mellitus with neuropathy, a painful right knee, insomnia with fatigue, high blood pressure, blurred vision at times in her right eye, and irregular menstrual cycle with anemia. (R. 266). She was 37 years old on her amended onset date of October 16, 2012. (R. 16, 116, 261). She has a high school education and past relevant work as a

---

[4]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

cashier-checker and cashier II. (R. 267, 324). Since her onset date, Hutchins has received some unemployment compensation. She has also applied for various jobs online. (R. 16-17, 221-22).

At her hearing before the ALJ, Hutchins testified that she was unable to work because of difficulty standing for more than thirty minutes due to problems with her feet; a three-year history of difficulty gripping objects; and a one-year history of dizziness and shortness of breath when bending and stooping. (R. 18-21). The ALJ determined that Hutchins could perform her past work as a cashier and, alternatively, could perform work as a counter clerk, furniture rental clerk, and dealer accounts investigator. (R. 79).

## V. DISCUSSION

Hutchins asserts two claims of error: (1) the ALJ acted improperly in "rejecting the opinion[s]" of treating physician Dr. Gary Walton and consultative examiner Dr. Walid W. Freji and (2) the Appeals Council erred in failing to consider evidence submitted to the ALJ and before it. (Doc. 9 at 2).

### A.    Consideration of Opinion Evidence

#### 1.    Generally

When determining the weight to be given an acceptable medical source such as a physician, an ALJ is to consider numerous factors, including whether the

physician examined the individual, whether the physician treated the individual, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). A treating physician's opinion generally is entitled to more weight, and an ALJ must give good reasons for discounting a treating physician's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). This is particularly true when the treatment "has been over a considerable period of time." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "However, the nature of the relationship between the doctor and the claimant is only one factor used to determine the weight given to a medical opinion." *Chambers v. Astrue*, No. 1:11-cv-02412-TWT-RGV, 2013 WL 486307, at *27 (N.D. Ga. Jan. 11, 2013) (citing 20 C.F.R. § 404.1527). An ALJ may discount a physician's opinion, including a treating physician's opinion, when the opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding. *See* 20 C.F.R. §§ 404.1527(c)(3), (c)(4), 416.927(c)(3), (c)(4); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.

2004).

## 2. Dr. Gary Walton

Hutchins argues that the ALJ improperly rejected Dr. Walton's opinion when she found that Dr. Walton had not treated Hutchins between her June 25, 2013 office visit and the date he completed her Medical Source Statement (MSS) forms on November 4, 2013. (Doc. 9 at 2-5). The Commissioner responds that the ALJ properly considered the relevant evidence in assessing Hutchins's residual functional capacity (RFC). (Doc. 10 at 5).

Dr. Walton completed a MSS concerning Hutchins in November 2013 in which he opined that in an eight-hour day, Hutchins could sit for three hours, stand/walk for two hours, and lift ten pounds occasionally and five pounds frequently. (R. 405). Dr. Walton also opined Hutchins could rarely push or pull with the upper or lower extremities, climb stairs or ladders, balance, or work with or around hazardous machinery but could occasionally bend and stoop, reach, and operate a motor vehicle. (*Id.*) He further opined that Hutchins should avoid dust, fumes, gases, extremes of temperature, humidity, and other environmental pollutants and that she would be absent from work about three times per month due to her treatment/impairments. (*Id.*) In support of his opinion, he indicated Hutchins has diagnoses of osteoarthritis, carpal tunnel syndrome, diabetes, and

uncontrolled hypertension; that she experiences side effects of medications including frequent urination and diarrhea; and she wears splints on both wrists and a boot on the right foot. (*Id*.) The ALJ found that Dr. Walton's opinion regarding Hutchins's functioning was entitled to little probative weight because the opinion was inconsistent with his own records, which showed generally normal examinations. (R. 75).

Articulating his reasoning, the ALJ made a number of determinations that are instructive. First, the ALJ stated that the June 2013 examination, which was the last examination by Dr. Walton prior to his completion of the MSS, was essentially unremarkable except for the assessment of obesity and hypertension. (R. 75, 413-14). Thus, the treatment rendered for that visit did not relate to Hutchins's allegedly disabling medical conditions. (R. 413).

Second, the ALJ noted that one week after Dr. Walton completed the MSS, Hutchins's November 12, 2013 treatment was only for irregular menses. The visit also showed Hutchins's examination was normal except for her obesity. She showed no evidence of respiratory, vascular, extremity, musculoskeletal, neurological, cardiovascular, or psychiatric abnormalities. (R. 75, 407-09).

Third, the ALJ noted that although Dr. Walton opined Hutchins should avoid pulmonary irritants (R. 405), there was no evidence of a medically

determinable pulmonary impairment in the record (R. 75).  This is correct.  Dr. Walton's examinations consistently demonstrated normal pulmonary findings.  (R. 73-75, 383, 386, 391, 396, 400, 408, 412, 486, 489, 494, 499, 502, 507, 543, 547, 551).  Similarly, examinations performed by other physicians have shown normal respiratory/pulmonary findings as well.  (R. 441, 456, 465, 482, 519).

Fourth, the ALJ found that Dr. Walton's opinion that Hutchins experiences adverse medication side effects (R. 405) was not supported by the record.  Specifically, the ALJ noted Hutchins never sought treatment for any side effects, she never mentioned them during her treatment, and the treatment notes show no complaints of frequent urination or diarrhea, which is indicative of such issues.  (R. 75, 77).  Additionally, in one of her Disability Reports, Hutchins disavows any medication side effects.  (R. 303).

Fifth, the ALJ found that, contrary to Dr. Walton's general statement, that Hutchins wears wrist splints, there was no evidence she wore wrist splints during the day.  (R. 75).  In fact, while Hutchins was told she could try splints (R. 384), they were prescribed to be worn at night.  (R. 34, 425).  Additionally, the record demonstrates that she wore them intermittently between March 2013 and December 2013 without relief.  (R. 425).  The record does not indicate that she used them after December 2013.

Sixth, with regard to Dr. Walton's assessments of osteoarthritis, the ALJ noted there was no evidence of significant osteoarthritis as Hutchins's examinations showed no musculoskeletal deformities and normal exam/full range of motion. (R. 72-75, 377, 383, 386, 391, 396, 400, 402, 409, 412, 466, 486, 489, 494, 499, 502, 507, 543, 552).

Seventh, the ALJ further found that the record was inconsistent with Dr. Walton's assessment of postural limitations of reaching, stooping and bending. (R. 75). The ALJ also observed, "Neither the claimant's complaints during treatment or examination findings suggest that she would be frequently absent" from work (Tr. 75).

The foregoing findings by the ALJ provide substantial evidence for her conclusion that Dr. Walton's opinion was not supported by or consistent with Hutchins's treatment records. Accordingly, Dr. Walton's opinion was entitled to little weight. *See* 20 C.F.R. §§ 404.1527(c)(3), (4), 416.927(c)(3), (4); *Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41.

Hutchins cites to various treatment notes, including the following from her report on October 31, 2013, to UAB Highlands with hand pain: "a positive Phalen's test, right greater than left"; a diagnosis of "bilateral carpal tunnel syndrome, bilateral cubital tunnel syndrome, and bilateral cheralgia paresthetica";

and

> pain with Durkins, [positive] Tinel's median distribution at wrist, numbness with phalan's [sic], numbness ulnar distribution with elbow flexion at 6 seconds, 2 point approx 8 mm median distribution, 4-6 mm ulnar distribution, decreased sensation to light touch median and ulnar distributions, grip strength full and equal [bilaterally] and decreased sensation superficial radial nerve distribution from wrist crease distal.[5]

(Doc. 9 at 3 (citing R. 425)).  However, while these notes are descriptive of her diagnoses and symptoms, they do not adequately support Dr. Walton's conclusions as pointed out by the ALJ.  Additionally, these records do not establish work-related limitations. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *see also Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work") (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).  Further, symptoms, like diagnoses, do not establish functional limitations. *See* 20 C.F.R. §§ 404.1528(a), 404.1529(a), 404.1545(a), 404.1569(a), 416.928(a), 416.929(a), 416.945(a), 416.969(a). Symptoms are considered with the other evidence in the record to

---

[5]The Durkan's test, Phalen test, and Tinel's test are used to detect carpal tunnel syndrome. The Durkan's test, or carpal tunnel compression test, is the most sensitive of the tests. wttp://www.orthobllets.com/hand/6018/carpal- tunnel- syndrome.

determine a claimant's ability to work, and specifically in assessing a claimant's RFC. See 20 C.F.R. §§ 404.1528(a), 404.1529(a), 404.1545(a), 404.1569(a), 416.928(a), 416.929(a), 416.945(a), 416.969(a). The ALJ fully considered Dr. Walton's treatment notes, and as discussed above, those treatment notes showed that Hutchins generally presented with normal findings (Tr. 72-78). Thus, this evidence supports, rather than undermines, the ALJ's evaluation.

## 2. Dr. Walid Freji

Hutchins argues that the ALJ improperly rejected Dr. Freji's opinion and failed to properly consider her as a "whole person." (Doc. 9 at 4-7). The Commissioner responds that the ALJ did not rejected Freji's opinion and she correctly considered the entire record. (Doc. 10 at 13-16).

Dr. Freji performed a consultative examination on Hutchins at the request of the Social Security Administration on March 20, 2014. Hutchins reported progressive numbness and tingling in both hands with morning stiffness. (R. 465). Upon examination, Dr. Freji determined she had increased pinprick sensation over her palms with a sensation of pain. (R. 466). She also exhibited a positive Tinel's sign bilaterally. (R. 467). Dr. Freij performed a nerve conduction study, which revealed mild bilateral carpal tunnel syndrome. (R. 471). He diagnosed that Hutchins was experiencing bilateral carpal tunnel syndrome, progressively

worsening; diabetes mellitus, well controlled; hypertension, still fluctuating;

obstructive sleep apnea; and obesity.  He concluded,

> Based on the above history and physical examination patient would
> have difficulty performing jobs that would require her to use her
> hands repeatedly because that would increase her symptoms of carpal
> tunnel syndrome and would make her carpal tunnel syndrome worse.
> She would have also have difficulty in standing and walking for a
> prolonged period of time because of her obesity.

(R. 467).

Dr. Freij completed a Medical Source Statement on the date of his

examination.  He stated Hutchins could occasionally lift and/or carry up to twenty

pounds.  (R. 472).  He stated she could sit six hours at a time for a total of eight

hours in an eight-hour workday; she could stand one hour at a time for a total of

three hours in an eight-hour workday; and she could walk one hour at a time for a

total of three hours in an eight-hour workday.  (R. 473).  He stated she could

occasionally use either hand for reaching, handling, fingering, feeling, and

pushing or pulling, and she could occasionally operate foot controls.  (R. 474).

He stated she could occasionally climb stairs and ramps, balance, stoop, kneel,

crouch and crawl, but she could never climb ladders and scaffolds.  (R. 475).

He stated she could occasionally be exposed to moving mechanical parts,

operating a motor vehicle, humidity and wetness, dust, orders, fumes and

pulmonary irritants, extreme cold or heat, and vibrations, but she could never

be exposed to unprotected heights. (R. 476). He stated she could not walk a block at a reasonable pace on rough or uneven surfaces and could not climb a few steps at a reasonable pace with the use of a single hand rail. (R. 477). He stated these limitations had been present at this level since 2009. (R. 477).

With regard to Hutchins's first contention - that the ALJ rejected Freji's opinion – the court disagrees. The ALJ did not reject the opinion. She found that the opinion was due "significant but not great weight." (R. 76). She did find that portions of Dr. Freji's opinion were inconsistent with his examination and the record as a whole. (R. 76, 78). By way of example, the ALJ noted Dr. Freji's assessment of Hutchins indicated "only 'mild' carpal tunnel syndrome with full range of motion, no atrophy and no motor deficits" and thus "there is no evidence she was unable to perform frequent fine and gross manipulation." (R. 76). Additionally, in determining Hutchins's carpal tunnel syndrome was mild, the ALJ found Hutchins's treatment was conservative and there was no recommendation for surgery. (R. 78). Although NVC/EMG testing[6] specifically showed "evidence of only mild bilateral carpal tunnel syndrome affecting the sensory and motor components without evidence of denervation" (R. 467-71), Hutchins cites two

_____

[6]"An electromyogram (EMG) measures the electrical activity of muscles when they're at rest and when they're being used. Nerve conduction studies measure how well and how fast the nerves can send electrical signals." http://www.webmd.com/brain/electromyogram-emg-and-nerve-conduction-studies#1 (last visited June 12, 2017).

examinations and argues that the record provides evidence of carpal tunnel syndrome of greater severity than the NVC/EMG studies performed by Dr. Freji indicate. (Doc. 9 at 6). However, contrary to Hutchins's contentions, Dr. Freji's own examination showed "[n]o swelling, redness, heat or limitation in range of motion of any joint." (R. 466). The UAB Highlands records indicate symptoms and diagnoses, with no evidence of any manipulative limitation. (R. 425). As stated above, symptoms and diagnoses do not establish functional limitations. *See Moore*, 405 F.3d at 1213 n.6; *see also Wind*, 133 F. App'x at 690; *McCruter*, 791 F.2d at 1547; 20 C.F.R. §§ 404.1528(a), 404.1529(a), 404.1545(a), 404.1569(a), 416.928(a), 416.929(a), 416.945(a), 416.969(a). Thus, the record provides substantial evidence that although Hutchins might experience symptoms, she did not have any greater work-related limitations due to her carpal tunnel syndrome than determined by the ALJ and reflected in the RFC. (R. 71-78).

Additionally, the record supports the ALJ's observation that as to Dr. Freji's opinions related to environmental restrictions, "[t]here is no medically determinable impairment that would cause pulmonary or noise restrictions." (R. 76). Still further, the ALJ correctly stated that Hutchins had "full range of motion of the back and spine and, thus, there is no medically determinable impairment that would cause limitations in reaching." (R. 76, 383). The court, therefore,

concludes that substantial evidence supports the ALJ's decision to discount portions of Dr. Freji's opinions.

Hutchins also argues that the ALJ failed to consider her as a "whole person." (Doc. 9 at 5). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Here, the ALJ first stated that Hutchins did not have a combination of impairments that met or equaled a listing. (R. 18). *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902-03 (11th Cir. 2011) (holding that a clear statement that the ALJ considered the combination of impairments is adequate); *see also Wilson*, 284 F.3d 1219 (holding that language virtually identical to that used by the ALJ here was sufficient to satisfy the ALJ's burden to consider the claimant's impairments in combination); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529 (11th Cir. 1991) (same). Additionally, the ALJ's discussion of the medical evidence and inclusion of limitations related to several different impairments in the RFC finding shows that she considered the impairments in combination and evaluated Hutchins as a whole person. (R. 71-78). *See Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir. 1986) (given the ALJ's exhaustive consideration of the effect of these impairments on Jones's residual functional capacity, we conclude that the Secretary's findings

were sufficient ); *Argo v. Astrue*, No. 2:11-cv-2265-AKK, 2012 WL 1424912, at *6 (N.D. Ala. Apr. 23, 2012) (stating that "by exhaustively evaluating each of Argo's alleged sources of pain or impairment—and finding that the objective medical evidence fails to support the severity and intensity of these allegations—the ALJ sufficiently considered Argo's impairments in combination"). Still further, the ALJ also stated she carefully considered the entire record (R. 71) and there is no rigid requirement to refer to every piece of evidence in the decision so long as there is sufficient evidence to conclude the ALJ considered the claimant's medical condition as a whole. *Mitchell v. Comm'r of Soc. Sec*., 771 F.3d 780, 782 (11th Cir. 2014) (citing *Dyer*, 395 F.3d at 1211). Accordingly, the objective medical evidence provides substantial evidence to support the ALJ's finding that Hutchins was not as limited as opined by Dr. Freji and that she could perform a reduced range of light exertional activity.

**B.      The Appeals Council Did Not Err In Its Consideration of Submitted Evidence**

As discussed above, the Appeals Council initially remanded Hutchins's claim to the ALJ. It did so because it found that the ALJ had not proffered Dr. Freji's consultative neurological report to Hutchins. (R. 9). While the claim was still pending at the hearing office, Hutchins submitted updated medical records from Dr. Walton and from DCH Regional Medical Center. (*See* R. 485-554).

18

After the remand was vacated, Hutchins submitted records from Hill Hospital of Sumter County and Whatley Health Services.[7]  Hutchins argues that neither the ALJ or the Appeals Council considered these records.  (Doc. 9 at 7).  The Commissioner argues that Hutchins's contentions are meritless.  (Doc. 10 at 17-18).

In support of her contentions, Hutchins initially argues that the Appeals Council's denial notice dated April 4, 2016, states that the Council considered only two letters submitted by Hutchins's representative.  (Doc. 9 at 7 (citing R. 5)).  The Commissioner responds that it was not necessary for the foregoing medical records to be specifically listed because they already were part of the hearing level record on remand.  (Doc. 10 at 18 (citing R. 1-5)).  The court agrees with the Commissioner that it was not necessary under the circumstances for the medical records to be enumerated in the Appeals Council listing on the exhibits list.  The pertinent question for this court now is whether the decision under review is supported by substantial evidence in light of the whole record.  *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1267-68 (11th Cir. 2007) (stating

---

[7]Hutchins refers to the Whatley Health Services records as being the updated medical records from Dr. Walton.  (*See* Doc. 9 at 8).  The Appeals Council identifies them in the record as the Whatley Health Services records.  (R. 2).  They are captioned in the administrative record before the court as Whatley Health Services, Inc. records.  (R. 556-81).  The court will refer to them herein as the Whatley Health Services records or the Whately records for the sake of clarity.

that the district court did not determine whether the Appeals Council correctly

decided that the "administrative law judge's action, findings, or conclusion is [not]

contrary to the weight of the evidence currently of record"); *Smith v. Soc. Sec.

*Adm.*, 272 F. App'x 789 (11th Cir. 2008) (the court must determine whether the

denial of benefits was erroneous).

### 1.    Dr. Walton's Records

Hutchins initially states that the Appeals Council did not consider Dr.

Walton's records that were dated November 12, 2013, through May 21, 2015.

(Doc. 9 at 7).  She further states that these records show ongoing treatment for

diabetes, hypertension, obesity and sleep apnea, and an additional diagnosis of

idiopathic peripheral neuropathy on August 11, 2014.  (*Id*. at 7-8).  While these

records do demonstrate ongoing treatment, they do not undermine the substantial

evidence supporting the ALJ's decision.  The information in Dr. Walton's notes is

consistent with the other treatment records before the ALJ, which evidence reflects

"uncomplicated" diabetes mellitus (R. 487, 490, 495, 500, 503, 543, 553);

generally stable, but obese, weight with body mass index ranging from 50.44 to

52.88 (R. 486, 489, 494, 499, 542, 547); stable, but high, blood pressure ranging

from 144/106 to 160/95 (R. 486, 489, 494, 499, 502, 542, 547, 551); and

essentially normal physical examinations (R. 486, 489, 494, 499, 502, 543, 547,

551-52).  The May 21, 2015 office notes also reflect Hutchins was negative for new hypertension or diabetes mellitus symptoms.  (R. 541).  *See Smith*, 272 F. App'x at 802.  Accordingly, the court finds that Dr. Walton's additional medical records do not undermine the substantial evidence supporting the ALJ's findings and conclusion that Hutchins was not entitled to any benefits.

## 2. DCH Regional Medical Center Records

Hutchins next argues that records from DCH Regional Medical Center dated May 13, 2015, through May 15, 2015, show inpatient treatment for hematemesis, urinary tract infection, hypertension, diabetes, and iron deficiency anemia.  (Doc. 9 at 7 (citing R. 510-39)).  Instead of arguing how the evidence undermines the ALJ's decision, Hutchins simply asserts that the Appeals Council refused to consider them.  (Doc. 9 at 8).

The court has examined the DCH records and finds they are insufficient to warrant a remand of this case for a number of reasons.  First, the records concern an incident ten months after the ALJ's decision.  Second, while Hutchins was found to be positive for H. pylori bacteria and treated for an upper gastrointestinal bleed and urinary tract infection during her hospitalization, she was discharged in improved condition with instructions that she "[m]ay return to usual activity level as tolerated."  (R. 513).  Third, this appears to be a one-time occurrence.

Hutchins's May 21, 2015 follow-up visit notes show no complaints of abnormal bleeding. (R. 541). Accordingly, the court finds that these records involve a one-time incident well after the relevant period, and do not undermine the ALJ's findings and conclusion in any way.

### 3. Hill Hospital and Whatley Health Services Records

Hutchins states that the Hill Hospital records for September 13, 2015, show a diagnosis of right knee arthritis. (Doc. 9 at 8 (citing R. 577-81). Similarly, she states that the Whatley records show the same diagnosis. (*Id*.) She also states that the Whatley records show "continued treatment for diabetes, hypertension and obesity[;] ... new diagnoses of gastroesophageal reflux disease and right leg pain"[;]and that she "used an immobilizer for her carpal tunnel syndrome and was referred to a surgeon." (*Id*. (citing 556-71)). Hutchins offers no further discussion concerning the medical records, but again argues the Appeals Council refused to consider them. (Doc. 9 at 8). The Commissioner argues that these records are not chronologically relevant to the ALJ's decision. (Doc. 10 at 22).

The record is clear that the Appeals Counsel "looked at this evidence," found that it was "about a later time," and determined "it does not affect the decision about whether [Hutchins] was disabled beginning on or before July 10, 2014. (R. 2). Additionally, even if this evidence were to be deemed relevant,

which is a big step because it shows continuing treatment,[8] Hutchins has not

demonstrated how or why this evidence makes a difference in the determination

under review.

To the extent these records reflect an overall worsening of Hutchins's

physical condition because of new treatment for her carpal tunnel syndrome and

because of the onset of new impairments, including right knee arthritis with pain

and gastro-esophageal reflux disease, that would still not make the records

chronologically relevant. (R. 556-81). The new records show, at most, that her

condition worsened or deteriorated after the ALJ's decision. They do not

demonstrate a basis for remand of this matter.

Finally, to the extent these records might be deemed relevant, they still do

not evidence that the ALJ's RFC determination is erroneous. Hutchins has not

challenged the ALJ's RFC determination. These records continue to evidence

similar clinical and diagnostic findings regarding Hutchins's impairments as noted

by the ALJ. Specifically, the new evidence continues to show uncomplicated

diabetes mellitus (R. 560, 565, 568), obesity, and hypertension (R. 558, 564, 569,

578), and essentially normal physical examinations. (R. 558-59, 565, 568, 578).

---

[8]*See Recla v. Soc. Sec. Admin. Comm'r*, 594 F. App'x 592, 594 (11th Cir. 2015) (stating that an examination report's classification of a condition as "'[r]ecurrent' [was not] enough, without more, to show the evaluation's chronological relevance to the time period.")

## C.    Articulation Duty

Hutchins lastly asserts that the Appeals Council did not demonstrate that it adequately evaluated the new evidence discussed above.  Accordingly, she argues that a remand is required.  (Doc. 9 at 8-9).  The Commissioner responds that the Appeals Council articulated a legally sufficient rationale for denying review. (Doc. 10 at 25).

Hutchins argues that "[t]he A[ppleals] C[ouncil] must show in its written denial of review that it has evaluated adequately the new evidence.**" (**Doc. 9 at 9 (citing *Epps v. Harris*, 624 F.2d 1267 (5th Cir. 1980)).  However, the Eleventh Circuit has rejected this position.  It has stated:

> "The Appeals Council may deny or dismiss [a] request for review...."
> 20 C.F.R. § 416.1467.  But the Appeals Council is not required to make specific findings of fact when it denies review. It need only "consider the additional evidence" that is new, material, and chronologically relevant. *Id.* § 416.1470(b). The Appeals Council stated that it considered the new evidence that Parks submitted, and the Appeals Council added the evidence to the record. The Appeals Council was not required to do more.
>
> ....  Our Court recently decided *Mitchell v. Commissioner, Social Security Administration*, which controls this question.  771 F.3d 780 (11th Cir. 2014).  In *Mitchell*, we held that there is no requirement that "the Appeals Council ... provide a detailed discussion of a claimant's new evidence when denying a request for review." *Id.* at 783.  We explained that, where "the Appeals Council expressly stated in its letter to [the claimant] that it had considered his additional evidence, ... we ha[d] no basis ... to second-guess that assertion." *Id.* Parks's situation is indistinguishable from that of the claimant in

*Mitchell*. Parks submitted additional evidence to the Appeals Council, and the Appeals Council added the evidence to the record, stated that it considered the evidence, and denied review. As in *Mitchell*, nothing suggests that the Appeals Council failed to consider Parks's new evidence.

Parks's reliance on *Epps v. Harris*, 624 F.2d 1267 (5th Cir. 1980), and *Bowen v. Heckler*, 748 F.2d 629 (11th Cir.1984), is misplaced. In *Epps*, our predecessor court found that the Appeals Council had not "adequately evaluate[d]" new evidence. 624 F.2d at 1273. But as we explained in *Mitchell*, the decision in *Epps* "arose in a different procedural context," where the Appeals Council affirmed the decision of the administrative law judge. *Mitchell*, 771 F.3d at 783. *Epps* has little bearing on a denial of a request for review. *Bowen* is inapposite too. In *Bowen*, our Court "concluded the record established that the Appeals Council did not adequately evaluate additional evidence submitted to it because it viewed each of the claimant's impairments in isolation and did not consider their combined effect." *Mitchell*, 771 F.3d at 784. "*Bowen* requires the Appeals Council to apply the correct legal standards in performing its duties," but it does not require that the Appeals Council include with every denial of review a "detailed rationale for why each piece of new evidence submitted to it does not change the [administrative law judge]'s decision." *Mitchell*, 771 F.3d at 784.

*Parks ex rel D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 852-53 (11th Cir. 2015).

Hutchins is not entitled to any relief on this claim. In denying review, the Appeals Council stated that it looked at the new evidence consisting of the Hill Hospital and Whatley Health Services records. (R. 2). It also stated, "This information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before July 10, 2014." (R. 2). The

court finds this to be sufficient rationale for the Appeals Council's decision to deny review.

## VI.  CONCLUSION

For the reasons set forth above, the undersigned concludes that the Commissioner's decision is due to be affirmed.  An appropriate order will be entered separately.

**DONE,** this the 13th day of June, 2017.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge